STATE of Oklahoma, ex rel. OKLAHO-
MA BAR ASSOCIATION,
Complainant,

v.

Peter K. SCHAFFER, Respondent.

S.C.B.D. No. 3038.

Supreme Court of Oklahoma.

July 14, 1982.

Doyle W. Argo, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Stephen Jones, James Craig Dodd, Enid, for respondent.

Lawrence K. Hellman, Oklahoma City, amicus curiae.

OPALA, Justice:

In this proceeding against a lawyer for imposition of professional discipline, the issues are: [1] Did the respondent's alleged misconduct in placing print media advertisements constitute an exercise of commercial speech protected by the First Amendment? and if so [2] Are his acts impervious to governmentally-imposed restrictions? We answer both questions in the affirmative.

An employee of respondent's legal clinic had written the General Counsel of the Oklahoma Bar Association [Bar] for advice as to the propriety of a proposed advertisement. The Bar's reply expressed no opinion. Respondent then published several legal advertisements. The Bar's General Counsel notified him that an adverse report would be made to the Professional Responsibility Commission because certain of these advertisements were violative of the Code of Professional Responsibility [Code]. A complaint by the Bar was initiated shortly thereafter. No other complaints were made regarding these advertisements.

The trial authority found respondent guilty of violating the Code by publication of two of the three advertisements included in the complaint and recommended imposition of discipline. In its brief the Bar concedes that neither the respondent's use of the term "legal clinic" nor his third advertisement violated the Code. The issues here are thus limited to respondent's alleged impropriety in placing two print media advertisements. The advertisements in question—in addition to giving the name, address and telephone number of respondent's two legal clinics—contained the following information:

Advertisement # 1:

"adopt: to love and cherish as your very own. Perhaps you already love and cherish your step-child... Even so, he may be losing certain benefits. A legal adoption may give your step-child many of these benefits while telling your step-child you want him as your very own."

Advertisement # 2:

"Need a lawyer? 5 days—or free. Within 5 working days after you provide us with the information we need, we will file the necessary court documents, or if filing is not appropriate, begin providing legal services—or our services are free. Good for 30 days. DIVORCE NAME CHANGE WILLS INCORPORATION ADOPTION"

I.

DISCIPLINARY RULES ON WHICH THE COMPLAINT WAS SOUGHT TO BE FOUNDED

The applicable disciplinary rule of the Code of Professional Responsibility[1] provides in pertinent part:

Canon 2. *"A Lawyer Should Assist the Legal Profession in Fulfilling Its Duty to Make Legal Counsel Available"*

DR 2–101:

"(A) A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use, or participate in the use of any form of public communication containing a false, fraudulent, self-laudatory or unfair statement or claim.

(B) In order to promote the process of informed selection of a lawyer by po-

1. 5 O.S.1981, Ch. 1, App. 3.

tential consumers of legal services, a lawyer may publish, subject to DR 2–103, the following information only in print media described in DR 2–101(C) ... provided that the information disclosed by the lawyer in such publication is accurate, reliable, truthful, and displayed in a professional and dignified manner:

(1) name, including name of law firm and names of lawyers therein;

(2) addresses;

(3) telephone numbers—office and residence;

(4) foreign language ability;

(5) a statement as to whether credit cards or other credit arrangements are accepted;

(6) office and other hours of availability;

(7) legal fee information limited to the following:

(a) fees charged for an initial consultation;

(b) the availability upon request of a written schedule of fees or an estimate of the fee to be charged for the specific service;

(c) hourly rate ...;

(d) fixed fees for specific legal services, the description of which service is not subject to misunderstanding or is not deceptive ...;

(8) until permitted by the rules of the Supreme Court of Oklahoma a lawyer shall not include in an advertisement

(a) a statement of one or more fields of law in which the lawyer or law firm concentrates, or a statement that the practice is limited to one or more fields of law;

(b) a statement that the lawyer or law firm engages in the general practice of law;

(c) a statement indicating one or more fields of law in which the lawyer or law firm does not practice;

(d) a statement that the lawyer or law firm specializes in a particular field of law practice.

\*   \*   \*   \*   \*   \*

(J) Except to the extent permitted in DR 2–101, and DR 2–103 a lawyer shall not publicize himself, or his partner, or associate, or any other lawyer affiliated with him or his firm, as a lawyer through newspaper or magazine advertisements \* \* \*."

## II.

## FIRST AMENDMENT CONSIDERATIONS

■ Respondent contends that his conduct—the publication of the objectionable advertisements—is a form of commercial speech protected by the First Amendment.

In *Bates v. State Bar of Arizona*[2] the U.S. Supreme Court held that the First Amendment's protection of commercial speech, announced in *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*,[3] applies to governmentally-imposed regulation of advertising by lawyers. *Bates* permits the state to restrain advertising that is false, deceptive or misleading and that which proposes an illegal transaction. Although narrowly framed to allow lawyers to advertise the fees they charge for certain "routine" legal services, *Bates* does not condemn the state's power to restrict potentially or demonstrably misleading advertising.

More recently in *Matter of R. M. J.*,[4] the Court dealt with content-based restrictions on lawyer advertising by the Missouri state bar. Its rules permitted lawyers to include in a published advertisement only ten categories of information and strictly limited the manner in which areas of practice could be listed. Because the lawyer advertising there under scrutiny was not shown to be misleading or its restriction promotive of a

**2.** 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 [1977].

**3.** 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 [1976].

**4.** 455 U.S. ——, 102 S.Ct. 929, 71 L.Ed.2d 64 [1982].

substantial state interest, the attempted state suppression was condemned as constitutionally impermissible.

*R.M.J.* gives a broad sweep of protection to the exercise of commercial speech by lawyers. Its message is clear.

"Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proven that in fact such advertising is subject to abuse, the states may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the states may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing of areas of practice, if the information also may be presented in a way that is not deceptive. * * * Although the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception.

Even when a communication is not misleading, the state retains some authority to regulate. But the state must assert a substantial interest and the interference with speech must be in proportion to the interest served. * * * Restrictions must be narrowly drawn, and the state lawfully may regulate only to the extent regulation furthers the state's substantial interest." [5]

■ Under *R.M.J.*'s teaching lawyer advertising may be divided into these categories: (1) inherently misleading or proven to be misleading in practice, (2) potentially misleading or (3) not misleading. The first category may warrant absolute state prohibition. As to the second, the regulatory device, as suggested in *Bates*, is not neces-

sarily a total ban but rather a required disclaimer or explanation. The restriction on potentially misleading advertising may be no broader than reasonably necessary to prevent specific deception. Regulation of the third category must be justified by a showing of substantial state interest. [6]

In short, the "States retain the authority to regulate advertising that is inherently misleading or . . . has proven to be misleading in practice." [7] Carefully drawn restrictions—no more sweeping than reasonably necessary—may be imposed to further substantial state interests.

### III.

### RESPONDENT'S OBJECTIONABLE CONDUCT

Unless it is shown that the objectionable ads are either misleading or their restriction furthers some substantial state interest, respondent's exercise of commercial speech cannot be subjected to regulation.

■ The Bar does not contend that the ads are misleading. Nor did the trial authority find them to be so. The record fails to reflect that in practice ads of the type here under consideration may be misleading or that somebody has in fact been harmed by them. The substantial interest interposed by the state in justification of its restrictive policy—as applied to these ads—rests on the need for protecting an unsophisticated lay public from potential harm from lawyer advertising. We reject the claim as unfounded.

#### A. The "Adoption" Ad

■ This advertisement, it is argued, appeals solely to the emotions of the reader. It does not impart knowledge designed to foster informed and reliable decision making for counsel selection. The trial authority described the adoption ad as a form of

---

**5.** 455 U.S. at ——, 102 S.Ct. at 937–938, supra note 4.

**6.** The Court in *Bates*, supra note 2, found that the potentially adverse effect of price advertising—neither misleading nor potentially decep-

tive in itself—was not sufficiently related to a substantial interest to justify an absolute prohibition.

**7.** *Matter of R. M. J.*, 455 U.S. at ——, 102 S.Ct. at 939, supra note 4.

puffery, i.e., one that, though not deceptive, diverts attention of potential clients from the attorney's qualifications to extraneous and irrelevant matters. The alternative counseled by the trial authority—limiting the ad to the mere listing of the word "adoption"—would serve only to restrict the information that flows to consumers. The consumer's "right-to-know" was the basis for bringing lawyer advertising within the protected zone of free speech. The perils of harm to be dealt by professional advertising must be carefully weighed against the benefits from unimpeded flow of information. Advertising can play a meaningful role in aiding consumers' recognition of a legal problem and in gaining better insight into the economics of the law practice. We find this ad free of any information which could potentially deceive or mislead the public. Nor are we persuaded by the argument that a substantial interest of the state is served by the restriction sought to be imposed on this genre of lawyer advertising.

### B. *"Need-a-Lawyer?" Ad*

The trial authority viewed the self-imposed 5-day limit for promptness—contained in this advertisement—as a product guarantee and hence likened it to a lawyer's assurance of service quality. *Bates* left unresolved the continued efficacy of state use of power to curb published lawyer claims of guaranteed quality performance. Both *Bates* and *R. M. J.* noted that under certain circumstances some professional self-laudation might be so likely to mislead the public as to warrant governmental intervention.

■ Here, no argument is advanced by the Bar, nor did the trial authority find, that the ad to be condemned is either misleading or potentially deceptive. It is only because the advertising genre was found to be closely akin to the potentially impermissible claims of quality that the trial authority thought it fit for regulation. The analo-

gy sought to be drawn is inapposite. A lawyer's product guarantee might be deemed potentially or presumably deceptive if it is in the nature of a promise whose fulfillment is clearly beyond the sole control of the promisor. This is not the case here. Respondent's representations cannot be considered excessive because his pledge of prompt - service - delivery - or - free - performance is quite well within his own human means to accomplish.

■ Even if we assume that respondent's promise to provide free legal services whenever his performance is not rendered expeditiously bears an analogy to a guaranteed performance of quality work, we nonetheless fail to find a substantial state interest being promoted by the restriction sought to be imposed. The state surely has no demonstrable interest in suppressing delivery of free legal service or in discouraging expeditious lawyer performance. To the contrary, the ad content sought to be condemned appears compatible with public interest. The trial authority's concerns fail to demonstrate a constitutionally permissible basis for restraining free speech.

In sum, the respondent's print media advertisements were neither shown to be misleading nor potentially deceptive. Because commercial speech may be regulated only insofar as it is found reasonably necessary to further a substantial governmental interest, the restrictions placed upon the conduct for which discipline was sought to be imposed cannot be sanctioned.[8]

The trial authority's recommendation is disapproved and the disciplinary proceeding dismissed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, HARGRAVE and WILSON, JJ., concur.

SIMMS, J., concurs in part and dissents in part.

---

**8.** We are not dealing with the overbreath doctrine nor are we saying it is inappropriate. Our analysis is focused *on the ad* and not *on the Bar rules.* See *Bates v. State Bar of Arizona,* supra note 2, 433 U.S. at 380–381, 97 S.Ct. at 2691, 2707–2708, *Ohralik v. Ohio State Bar Association,* note 20, 436 U.S. 447, 462, 98 S.Ct. 1912, 1921, 56 L.Ed.2d 444 [1978].